CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JAN 09 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| ANN F. WARD, | ) | CASE NO. 6:11CV00008 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 6, 2009 protectively-filed application for supplemental security income ("SSI"), 42 U.S.C. § 1381 et seq. is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the plaintiff's motion for summary judgment and REMANDING this case to the Commissioner for further proceedings.

In a decision issued on May 26, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since May 6, 2009, her application date. (R. 14.) The Law Judge determined that plaintiff suffered the following severe impairments: degenerative disc disease, arthropathies, and obesity. (*Id.*) The Law Judge did not believe that plaintiff suffered an impairment or combination of impairments which met or medically equaled a listed impairment. (R. 18.) The Law Judge did find, however, that plaintiff's medically determinable impairments reasonably could be expected to cause her

alleged symptoms, but he was of the view that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not credible" to the extent they were inconsistent with the Law Judge's determination of plaintiff's residual functional capacity ("RFC"). (R. 20.) The Law Judge found that plaintiff retained the RFC to perform medium work, except that she could not crawl and was limited in reaching and in repetitive gripping and grasping with her right upper extremity. (R. 19.) The Law Judge found that plaintiff was unable to perform her past relevant work as a janitor, newspaper deliverer, and security guard. (R. 22.) Even so, the Law Judge determined that jobs exist in substantial numbers in the national economy which she could perform. (*Id.*) Ultimately, the Law Judge found plaintiff was not disabled under the Act. (R. 23.)

Plaintiff appealed the Law Judge's May 26, 2010 decision to the Appeals Council. (R. 1-3.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) This action ensued.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640 (4th Cir. 1966).

2

In a brief filed in support of her motion for summary judgment, plaintiff argues that the Law Judge's finding that her mental impairments were not severe is not supported by substantial evidence. (Pl's Brief, pp. 7-10.) Plaintiff further argues that the Commissioner did not discharge his duty to develop the record when he denied her request for a consultative mental evaluation. (Pl's Brief, p. 9.) The undersigned agrees.

The Law Judge determined that plaintiff's medically determinable mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities, and as such, they were not severe impairments. (R. 17.) A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities[1]. 20 C.F.R. § 416.920(c). "[T]he severity hurdle is a fairly easy one to clear." *Carr v. Commissioner of Social Security*, 2011 WL 1791647, at *9 (W.D.Va. May 11, 2011). Plaintiff bore her burden at this level of the sequential evaluation to demonstrate that her impairments were severe.

Plaintiff's testimony at her April 27, 2010 hearing before the Law Judge supports her contention that her mental impairments were severe. For instance, plaintiff testified that she suffered with anxiety and depression and frequently experienced panic attacks. (R. 32.) Plaintiff stated that leaving home caused her to experience panic attacks, and that she took medication to calm herself down when she was experiencing an attack. (R. 32-33.) Plaintiff testified that "sometimes" she experienced thoughts that she just wanted to die, and that she experienced crying spells two to three times a week. (R. 33-34.) Plaintiff further stated that she

---

[1] Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b)(1)-(6).

3

suffered "major" memory problems which were so severe that, at times, she forgot what day it was. (R. 37.) Finally, plaintiff explained that she had not been treated by a psychiatrist or psychologist because she did not have adequate funds for such treatment. (R. 33.)

The Function Report plaintiff completed on June 18, 2009 revealed essentially the same facts. Plaintiff noted that leaving home made her nervous and anxious, and that her depression caused her to sleep all day, and that she only got out of bed to go to the bathroom. (R. 185)

Plaintiff's account of the effects of her mental impairments is further corroborated by the medical evidence. The record reveals that plaintiff's treating sources at Bedford Christian Free Clinic ("Bedford") referred her to Central Virginia Community Services for a "criteria evaluation for services." (R. 290.) On September 10, 2009, plaintiff presented at the evaluation with symptoms of anxiety and depression and reported mood swings, tearfulness, and a lack of energy. (*Id.*) The evaluator, Tamra Routon, M.Ed., noted that plaintiff was being treated at Bedford with Paxil, Clonopin, Citalopram, and Amitriptyline. (*Id.*) Plaintiff reported that she had seen "numerous" doctors and therapists and believed that she needed to be in therapy. (*Id.*) Routon concluded that plaintiff was in need of on-going case management, medication management, and therapy. (*Id.*)

On March 8, 2010, plaintiff presented to the emergency room at Roanoke Memorial Hospital reporting to the nurse that "I don't care if I live or die." (R. 306.) Plaintiff further reported that "if I don't get help I am very confident that I will hurt someone or something else." (*Id.*) She stated that she was experiencing feelings of loneliness, anxiety, or hopelessness, and she was diagnosed as suffering with major depressive disorder, recurrent, without any psychotic

4

features and a GAF of 35[2]. (R. 307, 309.) Plaintiff was discharged on March 11, 2010 with a GAF of 55[3]. (R. 309.)

On March 19, 2010, just days after her discharge from the hospitalization, plaintiff presented at the Central Virginia Community Services for a follow-up appointment. (R. 314.) She was found to be functioning with a GAF of 50[4], and it was determined that she would benefit from monthly active case management and quarterly medication management. (R. 322-323.)

The foregoing evidence establishes that the Law Judge's determination that plaintiff did not suffer severe mental impairments is not supported by the substantial evidence. Moreover, the undersigned believes that the record is replete with evidence which certainly should have signaled to the Commissioner that plaintiff's mental impairments were sufficiently severe to, at the least, trigger further evaluation of their severity and effects, particularly in light of plaintiff's financial condition.[5] *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that the Law Judge has a duty to develop the record beyond the evidence submitted by the claimant when that evidence is clearly inadequate).

---

[2] GAF ratings are subjective determinations based on a scale of zero to one hundred of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual Mental of Mental Disorders 32 (4th ed. 2000) ("DSM–IV Manual"). A GAF of 31 to 40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). *Id.* at 34.
[3] A GAF of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks ) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*
[4] A GAF of 41 to 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.*
[5] Plaintiff's testimony concerning the state of her finances has not been rebutted by any other evidence in the case.

5

For all these reasons, good cause has been shown to remand the case for further proceedings. Thus, it is RECOMMENDED that an Order enter GRANTING the plaintiff's motion for summary judgment and REMANDING this case to the Commissioner for further proceedings under Sentence Four of 42 U.S.C. § 405(g).

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

January 9, 2012
Date